```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT

                                      :
UNITED STATES OF AMERICA              :
     Plaintiff,                       :
                                      :
     v.                               :      No. 2:06-cr-82
                                      :
JOSEPH BROWN,                         :
     Defendant.                       :
                                      :
```

**MEMORANDUM AND ORDER**

The Defendant, Joseph Brown, and his co-defendant, Jose Lavandier, are each charged with conspiracy and possession with intent to distribute cocaine and cocaine base.  Currently before the Court is Brown's Motion for Severance of Defendants.  For the following reasons, the Motion (Doc. 23) is DENIED.

## I. FACTS

On July 27, 2006, agents with the Vermont State Drug Task Force executed a search warrant at the residence of Timothy Brochu, where they located and seized a large quantity of powder and crack cocaine.  Detective Joshua Catella questioned Brochu about his drug activities while the search was carried out. Brochu stated that his source for the drugs was a heavyset Hispanic male, in his mid-20s, about 5'11" in height.  Brochu knew this individual as "Diddy."  Brochu stated that Diddy had a driver known as "BJ," a tall black male, of medium build, in his

mid-40s.  BJ had come up to Vermont with Diddy once or twice when Diddy sold Brochu drugs; Diddy had also come to Vermont by himself on other occasions.

Brochu agreed to cooperate with the agents.  That afternoon and the following day, he made and received a series of calls to and from Diddy's cellphone.  Brochu told Diddy that he needed a resupply of drugs and could pay him $30,000 towards a previous drug debt.  On July 28, Diddy told Brochu that he would be in Vermont later that day.  The two agreed to meet at a McDonald's in South Barre.  Brochu told agents that he expected that Diddy would arrive in a vehicle with New York plates.

Agents set up surveillance at the McDonald's before the scheduled meeting.  At about 4:00 p.m., they saw a gold minivan with New York license plates park in the McDonald's lot.  Two men matching the descriptions of Diddy and B.J. got out.  Ten or fifteen minutes later Brochu arrived, accompanied by an undercover officer and wearing a wire transmitter.  As the undercover officer's car transporting Brochu approached the McDonald's parking lot, Brochu said, "I think that's him in the minivan."  The officer parked, and Brochu walked over to the passenger side and spoke to Diddy, who was in the front passenger seat.  Brochu chatted for a few minutes with Diddy, who is Jose Lavandier, then told Lavandier that he was going to get money from his car.

When Brochu returned to the officer's vehicle, he informed the officer that he had seen a package in the backseat of the van.  At that point another police vehicle moved in to block the minivan, and officers arrested Lavandier and B.J., the driver of the car, who was Joseph Brown.  A supervisor noticed and seized a plastic bag from the floor of the minivan's backseat containing a Pop-Tart box with three plastic bags of white powder inside.  The bags were analyzed in a lab and contained over 200 grams of crack cocaine and about 90 grams of powder cocaine.  Lavandier had $1,500.00 and four cellphones on his person.  The minivan was registered to Brown.  Later, police found two home-made storage compartments above the rear wheel wells of the vehicle.

Brown and Lavandier were indicted together.  The Superseding Indictment charges each with conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base (Count I) and possession with the intent to distribute cocaine and cocaine base, Schedule II controlled substances (Count II).  The Superseding Indictment also contains a forfeiture count alleging that the $1,500.00 seized on July 28, 2006, and a 1996 Oldsmobile Silhouette, are forfeit to the United States (Count III).  Brown now seeks to sever his trial from a joint trial involving Lavandier.

## II.  DISCUSSION

Defendants may be charged in the same indictment "if they

3

are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  Brown does not dispute that the defendants were properly indicted together in this case.  "There is a preference in the federal system for joint trials of defendants who are indicted together," as such trials promote efficiency and avoid inconsistent verdicts.  Zafiro v. United States, 506 U.S. 534, 537 (1993) (citing Richardson v. Marsh, 481 U.S. 200, 209 (1987)).  However, if the joinder of defendants appears to prejudice a defendant, the Court may sever the defendants' trials or provide other relief as justice requires.  Fed. R. Crim. P. 14(a).  Brown argues that a joint trial would be prejudicial to him because he and Lavandier are likely to present mutually antagonistic defenses, each accusing the other of responsibility for the drugs found in the minivan, and because most of the evidence presented at trial will relate only to Lavandier.

   The Court will grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.  Mutually antagonistic defenses "are not prejudicial *per se*," and do not automatically require severance.  Id.  Nor is severance required "merely because [defendants] may have a better

4

chance of acquittal in separate trials." Id. at 540.

Brown argues that this case is analogous to United States v. Serpoosh, 919 F.2d 835, 837 (2d Cir. 1990), in which the court found that severance was required where "acceptance of one defendant's defense will lead the jury to convict the other." Notably, Serpoosh was decided prior to the Supreme Court's holding in Zafiro that mutually antagonistic defenses are not necessarily prejudicial and that any prejudice that does result is of a type that may be cured by a limiting instruction. Zafiro, 506 U.S. at 540; see also United States v. Salameh, 152 F.3d 88, 116 (2d Cir. 1998) (holding that any possible prejudice due to conflicting defense theories "was eliminated by the district court's repeated admonitions to the jury that each defendant's guilt had to be separately and individually considered.").

The facts in this case are similar to those in Zafiro, which involved multiple defendants accused of drug-related offenses who attempted to escape blame by placing it on one another.  In Zafiro, the Court held that although two defendants in the case had each asserted ignorance of the contents of a box which proved to contain drugs, and each had stated that the box belonged to the other, no prejudice resulted from the denial of a motion for severance.  Brown asserts that the same scenario will arise here, in that each defendant will argue that he did not possess the

5

drugs.  Even accepting Brown's assertion that his defense and Lavandier's will be mutually antagonistic, any resulting prejudice could be cured by a limiting instruction.  See Zafiro, 506 U.S. at 540; Salameh, 152 F.3d at 116.

Brown argues for a severance on the further ground that the majority of evidence to be presented at trial will relate only to Lavandier, which, he says, will prejudice him.  The Government concedes that more evidence will be presented about Lavandier than about Brown.  However, evidence against Brown will also be presented, including Brochu's testimony that Brown was present when Lavandier sold him drugs on other occasions; Brown's presence at McDonald's with Lavandier; and Brown's ownership of the minivan, which had been altered to include two home-made storage compartments above the rear wheel wells.

The Supreme Court held in Zafiro that "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty.  When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." Zafiro, 506 U.S. at 539.  No significant risk of prejudice arises in this case from the differing amounts of evidence against Lavandier and Brown.  The charges are not complex and there are only two defendants.  There is no allegation and no indication that evidence will be introduced

that is probative of Brown's guilt but technically admissible only against Lavandier.  There is no allegation or indication that exculpatory evidence that would be available to Brown if tried alone would be unavailable if he is tried with Lavandier.  Under these circumstances, no prejudice will result from a joint trial.  See id. (noting circumstances, not present here, in which a risk of prejudice may arise).  A properly instructed jury should have no difficulty in separating the evidence which implicates Brown from that against Lavandier.

### III.   CONCLUSION

For the foregoing reasons, the Motion for Severance of Defendants is DENIED.


Dated at Burlington, Vermont this 18th day of January, 2007.


/s/ Willliam K. Sessions III
William K. Sessions III
Chief Judge