```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT

UNITED STATES OF AMERICA,       :
                                :
                                :
        v.                      :     Case No. 2:06-cr-82-2
                                :
JOSEPH BROWN,                   :
                                :
        Defendant.              :
```

**MEMORANDUM and ORDER**

Defendant Joseph Brown, pro se, has moved for the Court to disqualify itself in this matter, and for dismissal of the indictment against him on several grounds.  For the reasons that follow, Brown's Motion to Recuse and Vacate Judge (Doc. 104) is denied.  Brown's Motion Seeking to Dismiss Indictment and All Related Charges Pursuant to Rule 12 in Violation of the Fifth and Sixth Amendments (Doc. 108) is denied with respect to his Arguments One through Three and Six.  His Arguments Four and Five relate to his pending motions challenging the selection and composition of grand and petit juries in the District of Vermont, and will be addressed along with those motions (Docs. 80 & 101).

**I.   Disqualification**

In support of his motion, Brown contends that this Court has a personal interest in, and personal knowledge of "disputed evidentiary facts" concerning his case as a result of having approved the District of Vermont's Plan for the Random Selection of Grand and Petit Jurors in his capacity as Chief Judge of the district.  He also contends that this Court has pre-judged his

argument challenging the jury selection procedure, citing a newspaper article covering an unrelated case with a similar grand jury challenge in which the Court was quoted as having said: "The percentage of African-Americans in the jury pool is consistent with the percentage of African-Americans in the community."  Adam Silverman, *Marble Dealer Requests Fraud Charges Dismissed*, Burlington Free Press, Feb. 9, 2008, at B2.  Finally, he contends that this Court lacks impartiality because it neglected to investigate his complaints that one of his arresting officers uttered a racial epithet to him, and that it took the oath and witnessed the sworn statement of Brown's arresting officer, which contained the erroneous information that Brown had two prior felony convictions.

    The due process clause guarantees a right to have a neutral and detached judge preside over judicial proceedings.  *Ward v. Vill. of Monroeville*, 409 U.S. 57, 62 (1972).  Section 455(b) of Title 28, United States Code, requires disqualification under certain circumstances, including where a judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding, § (b)(1); *see also* 28 U.S.C. 144; where he has been or is likely to be a material witness concerning the matter in controversy, §§ (b)(2), (b)(5)(iv); or where he knows that he has an interest in the subject matter in controversy that could be substantially

affected by the outcome of the proceeding.  § (b)(4).  A judge must also disqualify himself if his impartiality might reasonably be questioned.  28 U.S.C. § 455(a); *see also* Model Code of Judicial Conduct Canon 3.

The standard for determining the existence of bias or prejudice is the same for sections 144, 455(a) and (b)(1): "whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned."  *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987); *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000).  None of the allegations, taken individually or cumulatively, demonstrate lack of impartiality or a reasonable question concerning impartiality.

As a preliminary matter, Brown's affidavit in support of his § 144 claim is legally insufficient.[1]  Under § 144, before referring the matter to another judge, this Court is obliged to "inquire into the legal sufficiency of . . . an affidavit." *LoCascio v. United States*, 473 F.3d 493, 498 (2d Cir. 2007).  The

---

[1]  Section 144 provides that
   [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
28 U.S.C. § 144.

3

affidavit states:

> I believe that actual prejudice against me exists on the part of Chief Justice [sic] William K. Sessions, III, as he signed the District's Grand Jury Plan that I am challenging and I will have both judges testify under oath as to its operation, and that a question exists as to whether Judge William K. Sessions, III, can be impartial over this case.  I also assert as to Justice [sic] Garvin [sic] Murtha, there is a question about whether he can be impartial in ruling on this case as well.

Aff. ¶ 1 (Doc. 107).  Although any facts stated in the affidavit are taken as true, they must be legally sufficient to "show 'the objectionable inclination or disposition of the judge'; it must give 'fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment.'" *Wolfson v. Palmieri*, 396 F.2d 121, 124 (2d Cir. 1968) (per curiam) (quoting *Rosen v. Sugarman*, 357 F.2d 794, 798 (2d Cir. 1966)); *see also United States v. IBM*, 475 F. Supp. 1372, 1379 (S.D.N.Y. 1979) ("affidavit must 'show a true personal bias and must allege specific facts and not mere conclusions or generalities'") (quoting *Bhd. of Locomotive Firemen & Enginemen v. Bangor & Aroostook R. Co.*, 380 F.2d 570, 576 (D.C. Cir. 1967)).

   The fact that the judges approved the jury selection plan that Brown challenges, or that Brown wishes to present testimony from them concerning its operation simply does not raise a question of personal bias or prejudice.  Therefore, because Brown's affidavit is legally insufficient, the Court will not refer the matter pursuant to § 144.

Section 455(b)(1) requires a judge to disqualify himself for personal bias or prejudice concerning a party. 28 U.S.C. § 455(b)(1). In addition to the affidavit's allegations, Brown asserts that the Court has pre-judged his argument challenging the grand jury selection procedure based on his reported comments at a hearing on an unrelated case. The sort of bias or prejudice that requires disqualification indicates "a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess." *Liteky v. United States*, 510 U.S. 540, 550 (1994) (emphasis in original). Impressions or opinions resulting from information gained in earlier proceedings do not constitute the "bias" or "prejudice" that would warrant recusal unless they reveal "'a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *LoCascio*, 473 U.S. at 495-96 (quoting *Liteky*, 510 U.S. at 555). The reported comments do not display such bias or prejudice.

Moreover, in context, the Court's remarks do not display any sort of judgment whatsoever. The defendant in *United States v. Byors*, No. 2:06-cr-39, had made a similar challenge to the District's jury selection procedure. At oral argument on his motion, the Court asked Byors' attorney to comment on the statistics presented over several years and several jury pools,

"what appears to be the situation is that the percentage of African-Americans on the jury pools is consistent with the percentage of African Americans within the community, and that goes back to 1997.  Does it not?  I mean, . . . have I got my figures wrong, or am I right?"  The Court's question to the attorney was reported in the newspaper article as an evaluation of the data and a factual finding.  In fact, the Court made no findings of fact in connection with minority underrepresentation in the jury pool in *Byors*, because it ruled that the defendant had failed to establish a prima facie case of systematic exclusion (Mem. & Order dated Feb. 15, 2008 at 10).

Brown also contends that this Court has displayed bias or prejudice warranting recusal because it did not address an allegation of racial bias nor the presentation of false information concerning his criminal record.  As this Court has previously advised Brown, its role is to adjudicate matters that are properly before it, by way of motion in a pending case or the filing of an original action over which it has jurisdiction.  Brown's motion to dismiss indictment, filed March 14, 2008, and argued April 22, 2008, seeks dismissal on due process and equal protection grounds based on these claims, which are addressed below.  That Brown may anticipate an unfavorable ruling on his motion does not warrant recusal.

Section 455(b)(1) requires a judge to disqualify himself if

he has personal knowledge of disputed evidentiary facts concerning the proceeding.  Section 455(b)(2) requires disqualification if the judge has been a material witness in the matter in controversy, and Section 455(b)(5)(iv) requires a judge to disqualify himself if he is to his knowledge likely to be a material witness in a proceeding.  Section 455 (b)(4) requires disqualification if the judge has "any other interest that could be substantially affected by the outcome of the proceeding."  Brown argues that because in his capacity as Chief Judge of the District of Vermont he approved and signed the Plan for the Random Selection of Grand and Petit Jurors, and because according to the Plan he is responsible for the overall operations of the jury selection process, the Court's testimony is essential to Brown's motions challenging the District of Vermont's jury selection system.

There is first of all no indication that any facts concerning the creation of the Plan or the operation of the Plan are disputed.  As the Court understands his motion, Brown makes the legal argument that the Plan is statutorily and constitutionally deficient, and that jury selection pursuant to this Plan violates the Fifth and Sixth Amendment.  Thus at this point the Court does not have personal knowledge of disputed evidentiary facts and has not been nor is likely to be a material witness in this matter.  Should live testimony be required

however on any disputed point, the clerk of the court, as the manager of the jury selection process for the District, will be able to testify to any relevant facts.  Brown has not shown that this Court (or Judge Murtha) possesses any information that could not be provided by the clerk of court.

Brown has likewise not supplied any support for the suggestion that the Court has a personal interest that could be substantially affected by the outcome of the proceeding; accordingly the Court will not disqualify itself as a material witness or on the basis of personal knowledge of or interest in the matter in controversy, under Sections (b)(1), (2), (4) or (5)(iv).

Section 455(a) requires disqualification in any proceeding where the Court's impartiality might reasonably be questioned. "The ultimate inquiry under § 455(a) is whether 'a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned.' Disqualification is not required on the basis of 'remote, contingent, indirect or speculative interests.'" *United States v. Thompson*, 76 F.3d 442, 451 (2d Cir. 1996) (alteration in original) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)).  Brown has not provided any facts that would cause a reasonable person to conclude that this Court's impartiality could reasonably be questioned.  His motion to

recuse (Doc. 104) is **denied.**

## II. Motion to Dismiss

Brown has made several arguments in support of his motion to dismiss the indictment in the interest of justice for alleged deprivations of due process and equal protection, Fifth and Sixth Amendment violations, and civil rights violations. The Court reserves decision on those arguments that relate to his pending challenges to the District's grand and petit jury selection system. The remaining rationales do not warrant dismissal of the indictment, for the reasons stated below.

Brown argues first that he has been deprived of his liberty without due process of law because he has been incarcerated without bail or conditions of release since July 28, 2006, more than twenty-one months.

Brown's initial appearance hearing took place on July 31, 2006 by video conference before Judge Murtha. The government moved for pretrial detention without bail, and assigned counsel on behalf of Brown indicated that Brown would not be opposing detention at that time. The Court issued an order of detention, based upon the information submitted by pretrial services and the lack of opposition to the motion, finding that "there are no conditions of release, at this point at least, that would assure the appearance of the defendant."

On August 24, 2007, new assigned counsel moved to revoke the

pretrial detention order and have conditions of release set, but withdrew the motion on October 12, 2007 without it having been heard.  On February 7, 2008 Brown received permission to proceed pro se.

There is no question that "at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional," as a violation of due process.  *United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2d Cir. 1986).  Given that Brown did not oppose detention at his initial appearance, and apparently does not seek release at this time, the Court is unable to find that Brown's continued detention violates his due process rights.  Should he seek review or reconsideration of his detention order, the Court will weigh "'(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention [is] based;' that is, the evidence concerning risk of flight and danger to the safety of any other person or the community."  *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993) (quoting *United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993)).

The Court notes however that the remedy for unconstitutionally lengthy pretrial detention is release from confinement on conditions, *see United States v. Ojeda Rios*, 846 F.2d 167, 169 (2d Cir. 1988), not dismissal of the indictment.

Brown argues second that he has been subjected to bad faith malicious prosecution because one of the arresting officers called him by a racial epithet. He adds that the sworn affidavit of Detective Joshua Catella attesting that a criminal records check revealed that Brown had two prior drug felony convictions, was knowingly and intentionally fabricated. He further contends that he was indicted twice by all-white grand juries who were incited to indict him by witnesses who identified him as a black male. These civil rights and constitutional violations, he argues, require that the indictment be dismissed.

There may be situations "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973); *accord United States v. Williams*, 372 F.3d 96, 111-112 (2d Cir. 2004). The conduct of which Brown complains does not reach that level of outrageousness. This Court does not condone racist behavior, nor does it minimize the effect that such behavior has on Brown, or any individual coming before this Court. Brown may have other legal recourse, including a § 1983 lawsuit, but an instance of racial name-calling is not so shocking and outrageous as to bar further prosecution in his criminal case.

Detective Catella's affidavit erroneously asserted that

11

Brown had two prior felony drug convictions. Catella admitted at a suppression hearing held January 4, 2007 that the information was incorrect. Brown claims the incorrect information was a deliberate lie; the government claims it was an honest mistake. It is unnecessary to resolve this issue however, because even if the assertion that Brown had two prior felony drug convictions was a deliberate lie, Brown cannot show that he was prejudiced by the receipt of the incorrect information.

Dismissal of an indictment for a deliberate Fifth Amendment violation is inappropriate unless a defendant can show prejudice, or a substantial threat of prejudice. *United States v. Morrison*, 449 U.S. 361, 365-66 (1981). With the incorrect information deleted, the remaining facts supplied in the complaint established probable cause for Brown's arrest. And even had the complaint been rendered fatally defective, Brown's subsequent indictment would not have been affected. *See* Fed. R. Crim. P. 5.1(f) (dismissal of complaint does not preclude subsequent prosecution for the same offense).

Although Brown argues that the information caused him to be held without bail, he is mistaken. As discussed above, Brown's detention order was based on information supplied by Pretrial Services and his lack of opposition to the motion. The Pretrial Services report showed that Brown did not have any felony drug convictions.

A defendant must also show prejudice in order to win dismissal of an indictment based on misconduct before the grand jury.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).  Brown claims that Catella unnecessarily testified before the first grand jury that he was a "black male, fairly tall . . . medium build . . . older male."  Before the second grand jury he testified that he was a "black male."  In context, it is clear that Catella was being asked to relate how a coconspirator and cooperating witness had described the driver, an individual later identified as Brown.  The informant also testified that the driver was "a tall, older black male," whom he knew as "BJ."

Brown has not shown that eliciting this testimony constituted misconduct, much less that it was prejudicial, i.e., that it had an affect on the jury's decision to indict.  *See id.*

Brown argues third that this Court has publicly pre-judged his case, in violation of the due process and equal protection clauses of the Fifth Amendment, when it commented on the evidence presented in an unrelated case.  As discussed above, the comment was incorrectly described as an evaluation of the evidence, when it was a question to the attorney based on the record supplied in that case.  Given that there has been no pre-judgment of this case, it is unnecessary to discuss whether and under what circumstances a court's demonstrated bias or prejudice could

13

warrant dismissal of an indictment.

Finally, Brown argues that he has been labeled as an enemy of the United States Government and its citizens, and should therefore be accorded prisoner of war status.  He asserts that the evidence against him is fabricated and not evidence of guilt, and that systemic racism plagues the District's judicial system.  As to the first and third assertions, apart from their rhetorical power, Brown has not demonstrated why this should result in the dismissal of his indictment.  As to the assertion that the evidence cannot establish that he is guilty of the charge, Brown will be able to challenge the sufficiency of the evidence at trial, should the issue not be mooted by a successful challenge to the grand jury panel in his case.

## III. Conclusion

For the reasons stated above, Brown's Motion to Recuse and Vacate Judge (Doc. 104) is **denied.**  His Motion Seeking to Dismiss Indictment and All Related Charges Pursuant to Rule 12 in Violation of the Fifth and Sixth Amendments (Doc. 108) is **denied in part and reserved in part.**

Dated at Burlington, in the District of Vermont, this 13th day of May, 2008.

                                                      /s/ William K. Sessions III
                                                     William K. Sessions III
                                                     Chief Judge
                                                     U.S. District Court